Morning. How are you? Fine. Do you have any cases of yours you want us to take in bank? My name is Lee Titterington and I represent Michael Cameron, the appellant in this case. Mr. Cameron was convicted of carrying a firearm during and in relation to a crime of violence. The crime of violence in this case was arson. I'm sorry, I didn't get your name. Lee Titterington with the Federal Defender's Office in Phoenix. Okay. The issue in this case is what does in relation to mean in this particular context? In particular, we contend that it should be a narrow meaning in relation to, specifically because of a couple of other decisions that indeed did precede this, one in which Judge Kaczynski tried to define the word carry under this statute, and the Supreme Court in Muscarello decided that it could be a broader definition than Judge Kaczynski had decided, specifically because the words during and in relation to would be the limiting factors in this statute that would make sure it was applied in a way Congress intended. The government in this case has relied upon the Polanco case and tried to contend that merely because it contends that the gun in this case potentially emboldened Mr. Cameron to undertake the act in this case, that Polanco says that in that case, a potential emboldenment of a defendant in a drug case would indeed satisfy that requirement under the statute. We have contended that more is needed than mere just mere emboldenment without some specific evidence to indicate that that indeed did take place in this case. Well, what did you have in Polanco? Excuse me? What did we have in Polanco? I'm sorry, Judge, I didn't understand. What was there in Polanco like that? Polanco was a case in which there was a gun in a car, and the gun in the car was supposedly Mr. Polanco was involved in drug sales. The gun was in the car. Mr. Polanco would go back and forth toward the car, and theoretically in that case it was decided that the gun in the car did indeed embolden him as he partook in the drug sales. I contend, Judge, that that might be true in the Polanco case, but that's not true in this case. What do you do with Rutan and Collins? Rutan involved a stolen car, and Collins involved nighttime burglary. Are you familiar with those cases? Judge, Rutan is a case involving an interstate transportation with stolen vehicle, but there are two differences between Rutan and my case. Rutan is a sentencing case involving a different standard of proof. It involves a preponderance of the evidence standard as opposed to a beyond a reasonable doubt standard in this case. No, I saw that, but that's a pretty thin distinction. There are very few things that wouldn't support a finding beyond a reasonable doubt if they would support the finding of preponderance of evidence. Judge, we very specifically define beyond a reasonable doubt in a much more strict manner than preponderance of the evidence. But second, there's another distinction between my case and mine. This is not a question of weight of the evidence. This is really a conceptual question of whether or not you think the likelihood that you're going to run into somebody is significant. It just doesn't strike me as a kind of case where it would make a big difference what the standard of proof is. You're either persuaded that people are likely to show up and you might get to use a gun or you're not. Well, but Judge, in Rutan there was direct evidence in that case also. Because according to the summary of the evidence in that case in Rutan, the court in Rutan indicated that a witness in that case had indeed identified the firearm specifically used in that case. And that firearm was identified as the one that the defendant in that case always took with him whenever he drove the stolen car. And therefore the implication was that he took the firearm along with him whenever he drove the stolen car because he wanted to have access to it at the time he was driving the stolen car. So there was direct evidence of what the intent was in that case. And that's what we're talking about here. We're talking about intent. And what do you do with cars? I'm sorry, Judge, I don't have... Nighttime burglary. Carrying a gun during nighttime burglary. I'm sorry, Judge, I don't have it in my outline and I can't answer that. Sorry. Okay. Let me ask you another question. How far in terms of time sequence does the phrase in the statute, in relationship or in relation to, go? By that I mean is he carrying the gun or the firearm in relation to the crime if later on, and I'm juggling the facts here a little bit so you don't have to agree with my characterization of the facts, if later on he uses the gun to intimidate a witness to the crime so that that witness will not The way I understand your description, Judge, it's rather attenuated, but I guess it could indeed be related to the drug crime if it's used to intimidate a witness. Well, the reason I'm asking that, of course, is that he and the woman are driving away from where the arson took place. She sees the gun. She knows he has the gun because he's taken off the coat and I guess she knows he wears it all the time anyway. That's what she said. And he tells her, you know, don't talk about this. And she says he was kind of intimidating me into not talking. If he is using the gun as part of that intimidation, is that use of the firearm in relation to the crime? It would sound to me, Judge, more like it's using the gun in relation to a separate crime which is intimidating a witness. And it's not in use of the gun in relation to the crime, even though he's trying to get her to keep quiet about it? I guess, Judge, you might say it's not even during the prior crime that we're talking about. It's during a different crime. That's right. It's not during, but I'm asking about a different question, which is the category phrase, which is in relation to. Yes, Judge, but it wouldn't qualify at that point because it wasn't during prior crime. Okay. That's really a different element, I think. That's what during is related to. It's related to the timing as opposed to the connection. Even though he is wearing the gun during the commission of the crime, hops in the car, he's lit the fire at the storage unit, he jumps in the car, pulls off his coat, exposing the gun to Kendra Stephenson, drives off, tells her she's not to talk about this, and later on, apparently on another day, after she sort of put two and two together and figured out that he probably lit this fire, tells her she'll keep quiet if she knows what's good for her. Now, she has seen the gun, and the gun was on him during the commission of the crime. Yes. Diz the gun, did he use the gun during the commission of the crime in relation to this crime when he intimidated her. In other words, has he facilitated the commission of this crime by having her drive, showing her the gun, and telling her later on, you're going to keep quiet if you know what's good for you? Um, Judge, I don't believe that that makes the possession of the gun during the crime in relation to. I think that both during and in relation to have to be at the same time. Okay. So just to make sure I understand your answer, which is to say I'm now reading more than the phrase I initially quoted to you, the statute says a person who, quote, during and in relation to any crime. Yes. There are two separate elements, Judge, I believe. So, and you're saying if we're after the fact, even a fairly short period after the fact is no longer during. In this particular case, Judge, my understanding of the facts are that it was very quick that the crime happened. Mr. Cameron, um, nobody knows exactly how it was done because nobody saw how it was done. The only thing that we know is that Kendra drove him to the storage locker, that he apparently went in the storage locker at a point when she could not see what he was doing, that he came out of the storage locker. Apparently, the theory of the government was he may have dropped a match in some paper in the storage locker, that he closed the storage locker, merely took his coat off. At that point, Kendra saw that there was a gun on his hip. She wasn't surprised. She said it wasn't unusual because Michael always carries a gun. What if he, uh, hadn't had the gun with him at all? Let's say the gun was in the car between the two front seats, and so he does what he does in the storage locker, and there's security guard around, and security guard around, and gives chase on foot, or gives chase, you know, sees him, says, hey, buddy, what, what, what you up to? And he runs to his car, gets into the car, drives away, and as he is driving away, he pulls out the gun and shoots over his shoulder, and, uh, shoots at the guard. To secure his escape from the scene where he committed the arson? Well, that's a conclusion of law. I've told you the factual scenario. You're asking me if that would indeed fit the in-relation-to, which would be a conclusion. The de-during in-relation-to standard. He is making his getaway, or he is making his getaway from the crime. He is, uh, observed and suspicion is cast on him while he's making his getaway, and he doesn't have the gun right then when he's doing the lighting, but then it comes into his hand because he gets in the car, and in order to keep the guard, maybe the guard is, uh, is about to, uh, enter a vehicle and follow him, so he takes a gun, shoots over his shoulder, maybe shoots out the tire of the vehicle to, to, uh, keep the guard from, from following. Yes, I understand. Is that, is that, is that? I think there's case law. I don't have the citations for you, but judge case law, I believe the Ninth Circuit says that the escape is the continuation of the offense. So it would be indeed during an in-relation-to. Why doesn't this hold true? If the escape is a continuation of the offense, if chase is being given, then why isn't it true when he's in the car with his girlfriend and he's just committed a crime? Obviously, he's not going to hang around, uh, to, to, uh, to be observed at the scene of the crime, so he has to leave. He wants to get away as far as possible. And yeah, nobody's giving chase, but he tells his girlfriend, by the way, don't talk about this as he's sort of displaying his gun. Why is, why is the, why is that part of the crime too? I'm not sure. I, I understand that the evidence, excuse me, I understand. I understand what you asked judge, but I'm not sure. I understand that the evidence shows that he displayed the gun to her as he's telling her not to, to be quiet. We're, we're talking about You're talking about the question of whether this is still part of the crime, that's still during the crime. I understand, I understand that, judge. Well, no, I don't think you do understand that. Oh, I think I do. No, I don't think you do. No, I do. But you're answering the wrong question. The question is not whether he displayed or not. We can talk about that. But that's the, uh, scenario you gave me, that he displayed the gun to her while, um,  I don't think so. I don't think you're going to understand the question if you keep talking. Okay? We're talking about duration. We're talking about the question of whether he's still committing the crime as he's driving away and in some way makes use of the gun. Okay? And one answer I heard you give is that it is no longer, to judge Fletcher, I believe, is, well, he is now getting away. What happens to the car is not still part of the crime because the           Okay. And that's related to the different element of during the crime judge, as opposed to whether or not it's not only during the crime, but in relation to the crime. So you're conceding that while he is there with his girlfriend driving away, this is still during the crime? I suppose I am, Judge, yes. I don't believe, however, that we have a situation where... That's a different answer than you gave Judge Fletcher. Well, Judge... I'm... You're perfectly free to change your position on this. I'm just... Perhaps the scenario you've given to me is not the one that I'm dealing with in the evidence, Judge. So I don't believe... I believe... It's a simple question. I think ultimately it's the same question Judge Fletcher asked. I just asked it coming from a different direction. If he is driving away from the crime, is that still part of the crime? And I think I heard you say, yes, it is, because it's part of the getaway. Now we can ask the question of whether it's in relation to, but if that answer stands, then it's still part of the crime. The during element would have been satisfying. Well, Judge, in this particular case, there's no indication from the evidence that he displayed the gun to Ms. Stevenson, as you suggested in your scenario. He took his jacket off, right? He took his jacket off. Exposing the gun. The gun was then exposed, yes. Was it in a holster? Was it on a belt? Was it a shoulder? She testified that it was on his right side, and she said it was in a holster. Okay. So he's got a holstered gun, and he takes his coat off. At the end, as he's getting into the car, he's got a cigarette, and has exposed the gun to her right at the time that they're leaving. You're making it an active act that he actively exposed the gun to her, Judge, and I believe all that the evidence shows is that he took his jacket off and she saw the gun. Could the jury have concluded that the act was done deliberately, that it helps facilitate the crime? He's escaping from the scene. Presumably nobody else is. We can talk about whether he felt emboldened while he was at the storage unit, because there seemed to be nobody else around. But now we have one witness. We have one person between him and Freedom on the other side of the gate. Kendra Stevenson. Kendra Stevenson. And he has known her for several years. And as he comes back to the car to complete his getaway, which is still a part of the crime under our law, still during the commission of the crime, he exposes the gun to her. Now, it wasn't displayed. It wasn't sort of menacing. But he exposes the gun to her. Subsequently, on another day, after she's put two and two together, he tells her, You will keep quiet if you know what's good for you. You're saying he does this on a separate day. You've got a jury verdict against you, so the presumptions are going to run in favor of the government. I understand. Would the jury have concluded that by carrying the gun during the commission of the crime, including the getaway where he deliberately, where he exposes it, that it was deliberately exposed to Kendra Stevenson in order to emphasize to her, to reinforce what he's going to tell her later in so many words, but maybe didn't have to tell her at the time? You're going to keep quiet about this. But there's no evidence to support that, Judge. Ms. Stevenson said there was nothing unusual about the gun. Should you have had a directed verdict on this point? I moved for such a directed verdict, but was denied. That's why we're here. The fact is, Ms. Stevenson said there was nothing unusual. She saw the gun on his hip, and it was not unusual. It's not that. At that point, it hadn't quite dawned on her what was going on. It's only as she's driving out that she starts to see the smoke curling up from the ---- So your suggestion is that while Mr. Cameron may have intended to have displayed it to her to keep her quiet and she didn't even realize this, it still could have supported the verdict. It emphasizes to her that he is in a position of some coercion over her. Except she didn't say that. She said it wasn't unusual at all when she saw the gun on his hip. Although later on she said she felt quite intimidated by his threatening statement to her. But that's different than the intent to intimidate her by carrying the gun on his hip. Actions may speak louder than words at that point. But, Judge, that's in fact the obvious case. The obvious case, as I pointed out, the Loney case from the Third Circuit, talks about in-person confrontations. And there's only one in-person confrontation here that you're suggesting, that it's with Ms. Stevenson herself. And we know there was no ---- Let me ask you about that. I mean, he in fact doesn't run into anybody, I gather. We don't really know what happened. But assume he doesn't run into anybody in a locker or out there. But he could have. He could have. He is out in public. He is doing a criminal act. There are guards about. Presumably this is a guarded facility. There could be people observing him. I mean, he's sitting there, and all of a sudden somebody pops out and observes him. And he's got this gun with him. Why couldn't the jury infer that the gun was an additional safety precaution? This is not the accountant sitting in his office cooking the books. This was somebody out and about committing a crime of violence where the possibility that witnesses or law enforcement personnel might come on the scene and confront him was not a trivial risk. Why couldn't the jury infer that he had the gun there just against that very possibility? But the evidence shows that specifically Ms. Stephenson said he always carries a gun. It wasn't taken along specifically for this purpose. So what? Well, but that's important. And the fact is he ---- Why is it important? Because you're trying to tell me that the evidence supports a finding that he intended to carry the gun with him to facilitate the crime. And that's not ---- Again, you're going to have to remember that you've got a jury verdict on against you, which is why we have also reminded you. So the fact that he carries the gun all the time doesn't mean he didn't carry the gun this time with the intent of having it there. He may, in fact, have the gun with him all the time with the intent that he's confronted or he gets a difficult situation. Or maybe from the spur of the moment he sees a crime that he could commit, he'll have his gun ready in case he commits the crime and then, you know, there's a kind of opportunity. So he carries the gun with that intent. But why couldn't the jury infer that regardless of what his normal practice is, that day he took the gun in and he took the gun in in part because he thought there was some risk he would be confronted by law enforcement and others and he needed to be, he might shoot his way out of the situation. Why can't they conclude that? Because there's no evidence of that. There is no evidence that he took the gun with him because he expected to be met by other people. There's no evidence at all. That's all I'm saying, Judge. You're speculating. What would be the evidence? A confession? It happens in cases, Judge. I wouldn't be in this business if I didn't have clients who confessed all the time. As a matter of fact, one of the cases, indeed. You're saying that unless he says, that's why I took the gun in, the jury can't find that it was used during an inhalation? No, I didn't say that, Judge. But I'm saying that there has to be some evidence that that was happening. There is no evidence of that. Can I ask you this, just to make sure I've got my time sequence right? She drives him to the storage facility. She drives after the arson, she drives him away. And drops him off. And drops him off. Right. And when he says, keep quiet about this, in her words, I'm paraphrasing, but I think I got it more or less right, he kind of intimidated me. That's happening as she's dropping him off, in the trip from the storage facility to where she drops him off. This is not happening a day or two later. This is happening as she's dropping him off from the ride, from the storage facility. Is that how the sequence works? Sorry, Judge, I don't remember the exact time when he supposedly said that to her. I think it is, but it may make a difference. You don't remember whether it was the same day or a different day? I don't, Judge. I'm sorry. I think the record, I'm in volume two, page 344, basically I was told, Mike told me, this is Kendra Stevenson, after when I went to drop him off, for me to go straight home and not to say anything to anybody, and basically kind of intimidated me into keeping my mouth shut by saying, you know, if I knew what was best. So that sounds as though it's the same ride. It does sound that way, Judge, yes. We'll hear from the government. Thank you. Please record. I'm Roger Dockin. I represent the government in this case. This particular crime was not a spur of the moment type of thing as you might think it would be. He planned it out in great detail at least for a couple days, was in and out of that storage locker, had to find a way to get in to use her passcode. He had to find a way to cut the lock off with a torch. Any evidence that he planned it for the day when Kendra Stevenson would be picking up her truck from having him fix the brakes? No. We would have to get inside his mind whether he picked Kendra or whether he was planning to pick someone else. But if you look at the evidence, I mean, obviously he can't do it at night because he's got Julie Sarkeesian's code, but she doesn't get this 24-hour business. She can't get in there at night when there's not people running around, so he's got to do it in the daytime. And so you don't want to go in with your own number or your own car because they know you and they might see you and you might get identified. So, you know, he has lots of friends. Whether he picked her or he was going to pick someone else, that was just an opportunity. That happened to be Kendra Stevenson's car was kind of a little S-10 Blazer that she referred to as a piece of junk. It was always getting repaired and he would help her out. Whether he was just going to wait for that or use another friend that was close enough that he could trust, there's no way of knowing. But the point is that he went to a great deal of planning. It wasn't a spur-of-the-moment thing. He goes over there. He knows he's going over there that day, of course, because he's got her vehicle because he was fixing it that night. You know, it does get cold in Arizona occasionally in November and people put on jackets. He wasn't wearing somebody else's jacket and it wasn't zipped in the pocket. He wasn't carrying it along in a briefcase in somebody else's briefcase and he didn't know it was there. Also, when he got up in the morning, he put his gun on and he knew he had her vehicle and he knew he was going there. He consciously put the gun on to go there. And that's his problem. Now, tell me why it's in relation to under your theory of the case. Do you think he carried the gun in order to help him commit the arson itself, that is to say, to do what he was going to do in setting on a fire? Or was it for later intimidating Mr. Stevenson? I mean, in his mind, in what aspect is this gun being used in relation to and during the crime? Well, the government's theory to the jury was that there was all of these folks, you know, because it's got to be in the daytime because you can't get in there at night without using a zone card. So it's going to be in the daytime. There's 480 storage lockers. There's a lot of people that go in and out. Plus there's these maintenance guys. And Delano Overby was in there with the crew. And there's next door, there's a plant propagation nursery. So all those guys and all kinds of people that could wander by and see you and might do something to stop you or call the police. And on your way out, you would need it. So our theory to the jury was that he would need it to escape or to keep someone from stopping him doing it. Starting the fire took no time at all. He had already gotten, he had already changed the lock. So he had a key for the new lock. All he had to do was open it, raise the door with his bick. Presumably he was, Kendra saw him light a cigarette with a lighter right after he got out. So presumably he lit the fire with that. It would have been a very short period of time. So he's trying to get it down, cut the time period down where he's at risk. But there's still a risk that somebody could come up. And there's a lot of. Did you argue to the jury that part of the conduct that satisfies this during and in relation to provision of the statute was his dealing with Ms. Stevenson who gave him the ride? Well, he did not wave the gun around to her or anything like that. Let me ask you something different. Did you make that argument to the jury? No. The argument that we made to the jury was to, was to, you know, to help escape. Everybody was already. To help escape? Well, so if somebody caught him, to keep them from stopping him from doing it or so he could get out. He was, according to count three, which he was convicted of, he was a methamphetamine abuser. I'm fearful that he would have shot Delano Overby. You know, he's not a reasonable person had he seen him. And, you know, that's the way it came across. Kendra Stevenson was already intimidated. All of their friends said they were already intimidated by him. Didn't need to wave a gun and threaten him because they all said that they were intimidated by him. He was big, always had a gun. They were all afraid of him. And so, you know, the cases that I cited, I had a hard time trying to find. I looked for cases where people had guns in their possession but didn't take them out and brandish them. There's not a lot of them. There's just that burglary case, which is a sentencing guideline case. That was a felon in possession case. I think it was a cop that saw him put it in the bush after he got out of the check cashing place. And that court there was able to find that it had emboldened him. And, of course, in the Rutan case, which is an interstate transportation case, he kept it in the car. And so that would embolden him to keep it. And then the other one that I found that was cited was the power case. It was the guy that was walking around behind the drug deal. He was sort of the muscle man. He never actually did anything. I don't think he ever took his gun out and brandished it. But he was there in case things went wrong. And he was in an emboldening role. And in this particular case here, really the inference is that it was ready to use it for protection and intimidation should somebody catch him. And that's really corroborated by what happened when he got out. You have nothing but the naked presence of the gun. Well, there is a little more than that. Maybe enough. Well, of course, the thing is, number one. What more do you have? Well, it's where he was carrying it, first of all, because he put it there. You know, presumably he'd take. I thought the evidence was that he put it there every morning. That's true. Bank robbers, you know, go out of their way. A lot of bank robbers go out of their way not to carry guns because, you know, tellers aren't going to give them money. They try to avoid the enhanced penalties. This particular fellow, you know, if he was doing that, why did he take the gun? He needs it to get away. Look what he did four months later is really instructive of what his intent was. You know, he's getting pulled over. Now, I don't know. I would be thinking I'm getting pulled over. Did I stop at the stop sign or was I speeding or something like that? This evidence before the jury? Yes. As a prior bad act that took place? No, it was on a drug abuser. It was a prohibited possessor as a drug abuser in possession of a firearm. Well, they heard this narrative as to what happened later. Yes. But did they hear the narrative? Did you introduce that evidence because it was relevant or permissible to be introduced in terms of telling us what his intent was in carrying the firearm during the arson? Well, it was for both. It was for both. It was as a prohibited possessor, but it was also instructive of what he was planning to do with the gun if somebody tried to stop him. And, you know, four months before he committed a dangerous felony. And, you know, then he gets the police pulling him over. It shows what, you know, we've been having grand jury subpoenas, been chasing down all of his friends, and a little while later he gets pulled over by the police and he's obviously making a play for the weapon. It shows like just what he was going to do that day, escape from the police. You know, I looked everywhere to try to find a case where it wasn't in relation, where somebody was, you know, carrying a weapon but didn't brandish it. I couldn't find one because I thought that you were going to, you know, cross-examine me with it. But I don't think there are any that I'm aware of where somebody has a weapon that put it on that day and went to a violent crime and, you know, had it in their possession. You know, it would be a different case if it was in a pocket and he didn't know it was there or it was wearing somebody else's coat or something else. But he put that in his pocket or in his holster that day when he went to the crime. Thank you. Okay. Thank you. The case is tied with a standstill vote. We are adjourned. Thank you. Thank you.
judges: Kozinski, W. Fletcher, Bybee